UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>SHAWN S. PARKER,<br>Defendant. | Case No.: PO-12-4001-JPH<br><br>MEMORANDUM DECISION FOLLOWING TRIAL |

**BACKGROUND**

The Court held a bench trial on June 14, 2012. The United States was represented by AUSA Tyler Tornabene and USA intern Megan Mignella. The United States dismissed Count 4 of the Information and presented its case in chief, consisting of the testimony of Forest Service Officer Steve Roberson, and five admitted exhibits. Defendant is charged in Counts 1, 3 and 5 with selling or offering for sale any merchandise, or conducting any kind of work activity or service on National Forest Land not authorized by federal law, regulation, or special use permit in violation of 36 C.F.R. s. 261.10(c). Defendant is charged in Count 2 with threatening, resisting, intimidating, or interfering with a forest service officer engaged in the performance of his official duties in the protection or administration of National Forest Land in violation of 36 C.F.R. s. 261.3(a)

The Defendant was represented by Kraig Gardner. The Defendant did not call any witnesses but offered "Exhibit A" in evidence. The United States objected to the admission of Exhibit A on the grounds of relevance and the late submission of the offered exhibit. The Court deferred ruling on the admissibility of Exhibit A pending further briefing. At the conclusion of the evidence, the parties stipulated to submit closing arguments in writing. The Court has read the closing arguments and Defendant's Reply brief and is fully informed.

**EVIDENCE**

FSO Roberson testified that he had been employed by the U.S. Forest Service since June, 1973 and had retired on June 6, 2012. He underwent forest protection training in 1980 and Federal law enforcement training in 1990 and had been employed for many years as a Forest Service Officer in the Cle Elum Ranger District in the Okanogan Wenatchee National Forest. He regularly patrolled the Cle Elum Ranger District since 1973 and is familiar with the boundaries of the Okanogan Wenatchee National Forest. He testified that all the events in question occurred within the boundaries of the National Forest as shown on the map, produced by the Forest Service, admitted in evidence as Ex. 1. FSO Roberson testified that he has known the Defendant for 15 years and was able to identify him in court. He also knew that the Defendant owns and operates a business known as Cascade Playtime Rentals in the Lake Cle Elum area which business rents winter recreational equipment to the public. He testified that

he knew the Cascade Playtime logo and address and that he had accessed the business web page. He testified the Defendant advertised rentals of snowmobiles at between $100-$250.

FSO Roberson also testified that he was routinely required as part of his duties to patrol the area to determine if persons using the National Forest had any necessary special use permits. He said that the special use permit must be on the person of the individual who applied for it and to whom it was issued. He testified that the Forest Service maintained a register of persons who had received special use permits and that he was regularly apprised of events occurring in the National Forest that would require special use permits. He testified that the special use permit coordinator at the Forest Service did a specific search to see whether the Defendant had a special use permit for the events in question. He knew from previous contacts with Defendant that Defendant did not have a special use permit. Defendant had been cited previous to the dates in question by the Forest Service for violations of the same regulation pertaining to Defendant's business.

Snowmobiles often use groomed trails adjacent to the Salmon la Sac highway for recreational purposes. FSO Roberson testified that the events occurring on February 2 and 3, 2011 occurred north of the Cooper River junction but south of F.S. Road 4315 at approximately mile post 8.5. The events described in the evidence on 12/15/2011 occurred at the Cooper River junction.

FSO Roberson testified that in December 1999 he applied for permission from the Forest Service to work in his off duty hours for a company named Boulder Creek Enterprises. His job entails operating a snow cat grooming snowmobile trails on Saturday nights. Boulder Creek Enterprises is operated by Don May, a friend of FSO Roberson. Since 2010, Boulder Creek has rented snowmobiles in the area in competition with the Defendant's business. FSO Roberson testified that while he did not specifically advise the Forest Service of the snowmobile rental business of Boulder Creek Enterprises beginning in 2010, he did not believe there was a conflict of interest in working for them since he had nothing to do with Don May's rental business.

February 2, 2011- Counts 1 and 2

On this date, FSO Roberson was patrolling alone, southbound, on the Salmon la Sac highway (Forest Service Road 4300) during daylight hours in the Cle Elum drainage area within the Okanogan Wenatchee National Forest. He was wearing full duty gear and driving a green, marked Forest Service vehicle. He observed Defendant's trucks, trailers and snowmobile equipment parked in the northbound lane on the highway. See Ex. 2 and 3. He saw the Defendant speaking with other people, dressed in snowmobile clothing, on the side of the road. He counted 14 snowmobiles and approximately 12 people in the group.

Upon contacting the Defendant, FSO Roberson advised the Defendant that as they had discussed many times, he did not

have a special use permit. He told the Defendant he was in violation and to turn his equipment around, apparently to return to the rental shop. He said the Defendant refused to do so, refused to give identification (even though FSO Roberson knew him) and told FSO Roberson "They had rented and paid for them; they were going to ride and he'd (the Defendant) take the ticket." FSO Roberson did not arrest the Defendant believing the Defendant was extremely hostile and he was working alone. He testified that the Defendant spoke freely and was not under the influence of drugs or alcohol. He observed 12 of the snowmobiles were off loaded from the trailers onto the east side of the highway and driven away, northbound, by the group including Defendant. On checking, FSO Roberson found that the remaining snowmobiles on the trailer were registered to the Defendant's business and did not have current vehicle registration. FSO Roberson went back to the Defendant's place of business and waited for the Defendant, but he did not return there.

February 3, 2011- Count 3

On this date, FSO Roberson was again patrolling alone but was not in his designated Forest Service vehicle. He observed the same two vehicles belonging to the Defendant travelling north on the Salmon la Sac highway in the same approximate location as the day before. He saw the Defendant accompanying the business vehicles in his own personal vehicle, a Toyota FJ. As he approached the Defendant's vehicles, he saw the

snowmobiles ride north further into the National Forest. The Defendant did not accompany the snowmobiles as he had the day previous. The Defendant returned south towards Cle Elum. FSO Roberson did not see the Defendant unload the snowmobiles from the trailers on this occasion. He did not have contact with the Defendant that day. There was no testimony about how many snowmobiles were present, how many riders were present or whether the witness knew if the snowmobiles belonged to the Defendant and/or were rented from Cascade Playtime Rentals that day.

December 15, 2011- Count 5

On this date (which was the snowmobiling season after that referenced in Counts 1,2 and 3), FSO Roberson was again patrolling along the Salmon la Sac highway near the Cooper River junction. He observed a truck from Cascade Playtime Rentals along side the highway. Exs. 4 and 5. He pulled into a turn around and saw the Defendant talking with a large group of about 15 people alongside a like number of snowmobiles. He testified that the Defendant made eye contact with him, immediately pulled on his helmet and led all but two of the group further into the National Forest on snowmobiles before Roberson could make contact. He testified that the group then travelled on Forest Service Road 4600 (Cooper Lake Road) and that at no time did Defendant display a special use permit to him.

**LEGAL ISSUES**

**A. Did the United States meet its burden of proof as to whether Defendant had rented the snowmobiles to others in furtherance of his business on the dates in question AND whether Defendant did not have a special use permit allowing him to conduct his business on National Forest Service land?**

There was limited testimony from FSO Roberson as to whether the other persons on snowmobiles on the dates in question had rented them from the Defendant. However, the circumstances of each contact, coupled with Roberson's past knowledge of the Defendant, would allow the Court, as the trier of fact, to draw the inference that Defendant had rented the snowmobiles to the persons accompanying him. The snowmobiles were registered to the Defendant. The vehicles transporting the snowmobiles were used in Defendant's business. On February 2, the Defendant made spontaneous statements that they had "rented them and were going to ride" and he would "take the ticket" knowing he was in violation of the law requiring a special use permit in order to conduct his business. Defendant appeared to be instructing or guiding two of the trips personally on February 2, 2011 and December 15, 2011 and drove the snowmobiles to the site where they were off loaded from the trailers. Additionally, the Defendant and a group of his customers rode the snowmobiles on Forest Service Road 4600 on December 15, 2011, in addition to operating them within the easement described in Ex. A.

Defendant argues that the Court should not have admitted FSO Roberson's testimony that Defendant did not have a special use permit under ER 803(10). That rule states:

To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.

ER 803(10).

Here, FSO Roberson testified that the Forest Service's special use permit coordinator kept the records of such permits current, accurate and complete. He said the coordinator did a specific search to see whether the Defendant had a permit. He testified he knew from his past contacts with Defendant that he had no permit. During each of the three incidents, Defendant never tried to display a special use permit to FSO Roberson and in fact appeared to flee from the scene before he could be contacted regarding a special use permit on at least one occasion.

As to Counts 1 and 5, the Court FINDS that the United States has met its burden with regard to the elements of proving that the Defendant was engaged in selling or offering for sale any merchandise or conducting any kind of work activity or

service not authorized by federal law, regulation, or special use authorization. The Court further FINDS that the activities of the Defendant occurred within the boundaries of the Okanogan-Wenatchee National Forest, Cle Elum Ranger District.

As to Count 3, the Court FINDS that the United States has not met its burden to establish the element of proving that the Defendant was engaged in selling or offering for sale any merchandise or conducting any kind of work activity or service. There is an absence of specific evidence and that lack of evidence does not permit the Court to draw the inferences necessary to find the Defendant guilty of the violation charged in Count 3. Count 3 is therefore **DISMISSED WITH PREJUDICE.**

**B. Did the United States meet its burden of proof with regard to the charge of proving that the Defendant threatened, resisted, intimidated, or interfered with a forest officer engaged in the performance of his official duties in the protection or administration of National Forest Land?**

The Ninth Circuit has held that under 36 C.F.R. § 261.3(a), "interference" means to "oppose, intervene, hinder, or prevent." *United States v. Willfong*, 274 F.3d 1297, 1301 (2001).

In order to establish a violation of 36 C.F.R. § 261.3(a), the United States must prove the following elements beyond a reasonable doubt: (1) that the Defendant did interfere; (2) with a forest service officer; (3) engaged in the performance of his official duties in the protection or administration of National Forest Land.

1. The Defendant did interfere.

On February 2, 2011, the Defendant continued to conduct his rental business and ignored FSO Roberson's attempts to stop it. The Defendant affirmatively refused to obey Officer Roberson's orders, and therefore interfered with the forest officer's ability to enforce the law. Defendant's conduct toward FSO Roberson was described as "extremely hostile". It is undisputed that Defendant took his group of renters into the National Forest after the confrontation, thus thwarting FSO Roberson's demands to cease his activity. Additionally, because the Defendant failed to produce his identification at the request of a forest service officer, he interfered with the forest service officer's ability to enforce the law and protect National Forest Land.

2. With a forest service officer.

The United States demonstrated that on February 2, 2011, Officer Roberson was employed by the United States Forest Service.

3. Engaged in the performance of his official duties in the protectionor administration of National Forest Land.

The United States has shown that on February 2, 2011, Officer Roberson was engaged in official duties as a law enforcement officer of the United States Forest Service. He was on duty, and performing an act that contributes to the protection, improvement, or administration of National Forest Land.

As to Count 2, the Court FINDS that the United States has met its burden with regard to the elements of proving that the Defendant threatened, resisted, intimidated, or interfered with a forest officer engaged in the performance of his official duties in the protection or administration of National Forest Land.

**C. Admissibility of Exhibit "A"**

Ex. A was offered into evidence as a self-authenticating certified copy of a public record under ER 902. It is not disputed by the United States that Ex. A applies to the Salmon la Sac highway in the area where the events occurred.

Ex. A was furnished to the United States after the deadline established by the Court's pre-trial order for close of discovery. However, the document is relevant and, since the issue of jurisdiction may be raised at any time, it appears to the Court that Ex. A should be admitted into evidence and considered by the Court. Ex. A is therefore ADMITTED.

**D. Jurisdictional Issue**

Defendant summarizes the issue as follows:

The overarching issue is whether 36 CFR § 261.1 requires a finding that the actions taken by Mr. Parker in this case are not within the scope of the prohibitions of that section. The defense asserts that this is a jurisdictional issue. As it relates to the counts of the information at trial, it would require dismissal and/or findings of not guilty on counts 1, 2, and 3. Defendant's Closing Brief (ECF 50).

Essentially, Defendant contends that the United States Forest Service does not have jurisdiction over Salmon la Sac road because it is a Kittitas County road subject to an easement and right of way for "public road purposes" as reflected in Ex. "A".

Defendant's argument is twofold; **first** that the Salmon la Sac highway is exclusively conveyed (via Ex. A) to the public for "public road purposes" and is not subject to regulation by any other governmental entity and, **second**, that even if the Forest Service has concurrent or other jurisdiction over the road to enforce Forest Service regulations there is no showing that jurisdiction is appropriate for the protection of Federal property under the facts of this case.

An analysis of Ex. A is somewhat instructive notwithstanding the lack of testimony regarding its creation or intent. The Court observes that it was filed for record in July, 1992, by a private landowner (Plum Creek Timber Company) in favor of Kittitas County. The Court takes judicial notice that this is well past the date when the Salmon la Sac highway began its actual path through the National Forest since the Court drove on the road many times in juvenile delight in the 1960s. The Court is skeptical of the assertion that Ex. A authorized, created or established a public right of way in the Salmon la Sac highway for the very first time and thus deprived the Forest Service of any jurisdiction within that easement. Of significance, the Easement does not purport to create any

exclusive rights in Kittitas County to the highway. Further, the Easement addresses additional development by the landowner (development of eight approaches for future access to Grantor's land) and it reserves to Kittitas County alone the option to "extend rights and privileges for use of the premises to other governmental agencies…"). The Court concludes that Ex. A was intended to moderate or equalize the burdens between a private landowner and the County in utilization or development of surrounding property, but was never intended to deprive any other governmental agency of the ability or jurisdiction to regulate conduct on the highway or within its described easement.

Defendant argues that Salmon la Sac road is not a National Forest System Road by definition in 36 CFR 261.2 as stated in pertinent part:

National Forest System road. A forest road **other than a road which has been authorized by a legally documented right-of-way held by a State, county, or other local public road authority**.

36 CFR 261.2 (emphasis added)

Defendant concludes that although there is no dispositive case law on the issue, legislative history instructs that the events charged in Counts 1,2, and 3 must be dismissed because the Forest Service does not have jurisdiction over the lands subject to the public right of way where the events occurred.

The Ninth Circuit has held that the sole existence of a right of way does not completely remove the Forest Service's jurisdiction and enforcement authority. See Adams v. United States, 3 F.3d 1254 (9th Cir. 1993); see also Adams v. United States, 255 F.3d 787 (9th Cir. 2001)(second appeal). Of note, the Adams cases hold that to the extent that the general public can make use of a road, the defendants could also do. But where the use made of the road goes beyond the uses by the general public, then a special use permit is required. Here, the Court finds that commercial or work activity, which is done by the delivery of multiple customers and snowmobiles to National Forest land at the side of the Salmon la Sac highway, goes beyond the use of the road by the general public.

While defendant may be correct, in a definitional sense, that Salmon la Sac county road is not a "National Forest System road," there is ample authority supporting the Forest Service's jurisdiction to enforce its regulations in this case.

The 9th Circuit has interpreted 16 USC § 551 ("Protection of national forests, rules and regulations"; the basis of the regulations alleged to have been violated - 36 CFR 261.10(c) & 36 CFR 261.3(a)) as conferring broad and concurrent federal jurisdiction to regulate activities that affect the national forests, even when the conduct occurs on non-federal land.

16 USC § 551 holds, in relevant part, that "The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and

national … and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction."

This power is subject to individual state legislative approval. Washington State enacted what is now RCW 37.08.220 which provides that Washington consents to the federal acquisition and management of national forest lands, and that "Washington shall retain concurrent jurisdiction with the United States in and over lands so acquired…"

The 9th Circuit has interpreted that § 551, as applied to 36 CFR 261.10 & 261.3, confers broad federal jurisdiction over activities that *affect* national forests. US v. Lindsey, 595 F.2d 5 (9th Cir. 1979) (as discussed/cited in US v. Arbo, 691 F.2d 862, 865 (9th Cir. 1982):

> "In United States v. Lindsey, 595 F.2d 5 (9th Cir. 1979), the defendant was charged with violating regulations issued by the Secretary of Agriculture regarding camping and building a fire without permits. These regulations, as the ones in the instant case, were issued pursuant to 16 U.S.C. s 551 respecting the National Forest System. Id. at 6 n. 1. **We held that even though the State of Idaho held title to the land on which the violations occurred, such ownership did not deprive the United States of regulatory control over the defendant's conduct.** In discussing the scope of Congress' regulatory authority **under the property clause**, U.S. Const. art. IV, s 3, cl. 2, we stated that "**(i)t is well established that this clause grants to the United States power to regulate conduct on non-federal land when reasonably necessary to protect adjacent federal property or navigable waters.**" Id. at 6. In Kleppe v. New Mexico, 426 U.S. 529, 538, 96 S.Ct. 2285, 2291, 49 L.Ed.2d 34 (1976), the Court observed that the "**power granted by the Property Clause is broad enough to reach beyond territorial**

> **limits.**" Thus, in this case we need not reach the issue of whether the incident in question occurred on state rather than federal land, **but rather decide it based upon whether the government agents' actions in confronting Arbo were "reasonably necessary to protect adjacent federal property.**
>
> We conclude that the officers' compliance inspection was reasonably necessary to ensure that practices on Arbo's claim did not pose a fire or health risk to adjacent federal land, regardless of whether the claim was on state land. Thus, under Lindsey, Arbo's interference with the officers is not beyond the jurisdiction of the United States."

The Court notes that Arbo was charged with the same offense as Defendant here, a violation of CFR 261.3(a), interfering with a forest officer.

Also see United States v. Scotford, 302 F. App'x 561, 563 (9th Cir. 2008) (unpublished):

> "For purposes of 36 C.F.R. § 261.3(a), a forest officer is performing an 'official duty' when the officer is on duty and performing an act that contributes to the protection, improvement, or administration of the National Forest." *United States v. Willfong*, 274 F.3d 1297, 1300 (9th Cir.2001) (citing *United States v. Ryberg*, 43 F.3d 1332, 1334 (9th Cir.1995)).
>
> **Actions taken on non-federal land contribute to the protection of the National Forest when they are "reasonably necessary to protect adjacent federal property.**" United States v. Arbo, 691 F.2d 862, 865 (9th Cir.1982) (quoting United States v. Lindsey, 595 F.2d 5, 6 (9th Cir.1979)).
>
> **Officer Thompson's actions were reasonably necessary to protect adjacent federal forest.** He was patrolling near an area closed to vehicle traffic to protect an endangered plant species and the deer migration. He had previously seen Scotford's snowmobile on the boundaries of the closed area, and had once cited him for snowmobiling in the closed area. Thus, trying to make contact with Scotford to ensure he knew of the area's closure "contributed to the protection improvement, or administration of the National

> Forest," even though Scotford was not then on federal land.
>
> The evidence supporting Scotford's conviction for violating 36 CFR § 261.10(m) also supports his conviction for violating 36 C.F.R. § 261.3(a). In Willfong, we held that the failure to obey a forest service officer's order constituted "interference" under 36 C.F.R. § 261.3(a). 274 F.3d at 1301. Thus, given that Scotford failed to obey Officer Thompson's orders, the magistrate judge rationally found that he violated 36 C.F.R. § 261.3(a)."

Defendant also argues that although there are circumstances where Congress may have jurisdiction over non-federal land, the facts in this case do not avail themselves of that jurisdiction because the charges brought are not in the nature of protecting Federal property. That is, the fact that Defendant operated his snowmobile rental business in close proximity to the National Forest did not threaten the Federal land or habitat such as building a camp fire near a dry forest may have done.

Defendant cites United States v. Brown, 200 F3d. 710 (10th Cir. 1999) for the proposition that it is the **actual use** of Forest Service land that triggers the need for a special use permit. He argues that no special use permit would be needed for him, for example, to rent snowmobiles to individuals in Seattle and, without assistance from him, those individuals would then be allowed to transport those snowmobiles to the Cle Elum Ranger District and operate them in the National Forest.

Setting aside for a moment the facts the Court has found regarding Count 5 (that the Defendant and several of his customers operated the snowmobiles on Forest Service Road 4600

in addition to his operations purportedly within the easement), the Defendant's last argument does not stand close scrutiny. First of all, it is contrary to law to say that unless the activity occurs on Forest Service land, that activity cannot be subjected to regulation by the Forest Service. Lindsey, *supra*, and the cases following are clear that the locus of the activity is not necessarily dispositive. A fire set on state land or local land may still present a hazard to adjacent Federal land.

Specific to the charges here pursuant to 36 CFR § 261.10(c), the Court can imagine scenarios where use of a commercially rented snowmobile adjacent to Federal land can create problems within the National Forest. Renting snowmobiles to multiple individuals untrained or inexperienced in their operation might cause fire, safety or environmental hazards within the National Forest even though the owner/operator of the rental business did not do more than unload the snowmobiles in the adjacent roadway or easement. Clearly, the promise and enticement of the Defendant's commercial venture is to allow the public to ride within the National Forest. And the owner/operator can make a profit from that activity if he or she has a special use permit to balance the commercial effort with the public needs for a safe and environmentally sound ride.

The Salmon la Sac highway is also designated as Forest Service Road 4300. The highway runs through the Okanogan Wenatchee National Forest. The location of the events described in the evidence is entirely surrounded by National Forest. The

language found in United States v. Brown, supra, at pages 713-714 seems apposite here as well:

"[if] an interpretation of the regulation were…as restrictive as the defendant urges, the entire purpose of the regulation would be defeated. An individual could bypass all the requirements that are part of a special use permit simply by storing his equipment outside the Forest Service boundaries and hauling them on the Forest Service after the negotiations had been completed."

The Court finds that the same rationale applies here. Whether the activity occurs on Federal land or adjacent to it begs the question as to whether the activity should be subject to permit in an effort to protect the National Forest.

**CONCLUSION**

Here, the Defendant failed and/or refused to obtain the necessary permit although having been advised many times to have one. The Court FINDS the Defendant **guilty** of a violation of 36 C.F.R. § 261.10(c) on Counts 1 and 5 and **guilty** of a violation of 36 C.F.R. § 261.3(a) on Count 2. Sentencing shall occur at a time convenient to the parties and set by the Clerk.

DATED this 19th day of July, 2012.

s/James P. Hutton
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE